UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMILY HANIGAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>OPSEC SECURITY, INC., and OPSEC ONLINE, LLC,<br><br>    Defendants. | Case No. 1:22-cv-00064-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Emily Hanigan's Motion for Court-Authorized Notice. Dkt. 28.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion. The Court GRANTS conditional certification; however, the proposed notice must be refiled incorporating the revisions outlined in this Order.

## II. BACKGROUND

Plaintiff Emily Hanigan brings a Fair Labor Standards Act ("FLSA") action seeking to represent a collective of similarly situated employees of OpSec Security Inc. and OpSec Online, LLC (collectively, "OpSec"). Dkt. 28-1, at 1; Dkt 35, at 2. Hanigan, a former brand analyst for OpSec, seeks to represent other similarly situated brand analysts, senior brand analysts, and employees who performed similar job duties and were not paid proper overtime compensation during the past three years. Dkt. 28-1, at 1.

Hanigan argues that the employees—regardless of job title, location, or supervisor—shared the primary job duty of "reviewing the internet for potentially illegitimate activity for Defendant's corporate clients." *Id.* at 1–2. Hanigan also asserts that OpSec misclassified these workers as exempt from overtime protections found in the FLSA. *Id.* at 2. Hanigan, along with four other former employees of OpSec, submitted affidavits asserting that each had similar job duties, that each regularly worked over forty hours a week, and that each were misclassified as exempt from overtime pay.[1] *See* Dkt. 28-3.

Hanigan has provided the Court with a draft of the notice to be sent out to all potential plaintiffs in the class action as well as the consent form the potential plaintiffs will use to opt-in to the collective action. Dkt. 36-2.

---

[1] Defendant counters there is evidence Hanigan and the other former brand analysts did not regularly work over forty hours a week. Dkt. 35, at 6.

### III. LEGAL STANDARD

Under the FLSA, employees may sue employers for violations of the Act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a collective action, and it proceeds somewhat differently than a Rule 23 class action because an employee who wishes to join an FLSA collective action must affirmatively opt in by filing a written consent. *See Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

Determining whether a collective action is appropriate is within the discretion of the district court. *See Warren v. Twin Islands, LLC*, 2012 WL 346681, at *1 (D. Idaho Feb. 2, 2012). The plaintiff bears the burden to show that the plaintiff and the putative collective action participants are "similarly situated." *Id.* at *2. The Ninth Circuit has clarified that "similarly situated" means "plaintiffs must be alike with regard to some *material* aspect of their litigation." *Campbell v. City of L.A.*, 903 F.3d 1090, 1114 (9th Cir. 2018). Thus, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

The Ninth Circuit uses a two-step approach to determine whether plaintiffs are "similarly situated." *Id.* at 1110 ("[I]t is now the near-universal practice to evaluate the propriety of the collective mechanism—in particular, plaintiffs'' satisfaction of the 'similarly situated' requirement—by way of a two-step 'certification' process."); *Herrera v. EOS IT Mgmt. Sols., Inc.*, 2020 WL 7342709, at *3 (N.D. Cal. Dec. 14, 2020) ("[T]o determine whether plaintiffs are "similarly situated," courts in this circuit use a two-step

approach."); *see also Warren*, 2012 WL 346681, at *1 ("[A] majority of courts adopt a two-step approach.").

The first step of the two-step approach is the "notice stage." *Herrera*, 2020 WL 7342709, at *3. During this initial step, the court determines whether the potential plaintiffs are similarly situated based on the pleadings. *Id.* If so, the court grants conditional certification of the collective action. *Id.* The second step occurs after discovery. *Id.* The defendant may move to decertify, and the Court then "makes a factual determination about whether the opt-in plaintiffs are actually similarly situated." *Id.*

This case is at the first step. At this stage, the plaintiff's burden to show that potential plaintiffs are "similarly situated" is lenient. *Weeks v. Matrix Absence Mgmt. Inc.*, 494 F. Supp. 3d 653, 656 (D. Ariz. 2020). "Plaintiffs must provide substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single, decision, policy or plan." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009) (cleaned up). Though "[u]nsupported assertions of widespread violations" are not enough to satisfy a plaintiff's burden, a court does not need more information than the pleadings and affidavits submitted by the parties to show "some identifiable factual or legal nexus binds together the various claims of the class members." *Fenn v. Hewlett-Packard Co.*, 2011 WL 6150642, at *1 (D. Idaho Dec. 12, 2011) (cleaned up).

At this early stage, courts have rejected arguments by defendants to introduce evidence going to the merits of plaintiffs' allegations. *Knight v. Concentrix Corp.*, 2019 WL 3503052, at *2 (N.D. Cal. Aug. 1, 2019). Indeed, courts in the Ninth Circuit have even

stated that the evidence provided by defendants need not be considered at this stage in the certification process. *E.g.*, *Kress*, 263 F.R.D. at 628; *Luque v. AT&T Corp.*, 2010 WL 4807088 (N.D. Cal. Nov. 19, 2010).

After conditional certification, notice of the FLSA action is given to potential plaintiffs. District courts have substantial interest in the language of the notice sent to potential plaintiffs as it reflects the neutrality of the court. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) Thus, it is appropriate for the Court to be involved in the process of crafting the language of the notice. *Id.*

## IV. DISCUSSION

### A. Conditional Certification

Hanigan has met her burden for conditional certification at this stage in the case. Although OpSec provides evidence that the analysts were not working more than forty hours a week, this evidence (and the argument that flows from it) are premature. Hanigan has provided more than one affidavit from multiple brand analysts that assert similar working hours, job duties, and a seemingly single policy that allegedly misclassified Hanigan and other brand analysts. This is enough to meet Plaintiff's lenient burden at this initial stage.

#### 1. *Appropriate Evidence at the Notice Stage*

OpSec provides evidence to rebut the evidence provided by Hanigan. Dkts. 35, 35-1. At this stage in the case, however, the Court cannot resolve factual disputes. There is not enough in the record to determine definite facts at the notice stage. OpSec argues that

Hanigan and other former brand analysts could not have worked more than forty hours a week regularly. Dkt 35, at 6–8. However, OpSec's evidence to support this argument is irrelevant to whether Hanigan has met her burden for conditional certification. OpSec will be able to raise this argument at a later time if still pertinent.

   2. *Similarly Situated*

To satisfy the "similarly situated" requirement at the notice stage of the collective action, Hanigan must provide evidence in the form of pleadings and affidavits asserting that "the putative class members were together the victims of a single, decision, policy or plan." *Kress*, 263 F.R.D. at 628 (cleaned up). However, this evidence cannot simply be unsupported allegations of widespread violations. *Fenn*, 2011 WL 6150642, at *1.

Hanigan has met this standard. Hanigan has submitted her own sworn affidavit along with the sworn affidavits of four other former OpSec employees. *See* Dkt. 28-3. These affidavits provide evidence that Hanigan and her former colleagues completed similar job duties, reported to Brand Analyst Supervisors located in Boise, worked mostly from home, used the same software to report hours worked, and were given work assignments in the same way. *See id.* Each of the affiants testified that they habitually worked over forty hours a week but were classified as exempt from overtime pay because they were salaried employees. *See id.* These affidavits demonstrate that the potential plaintiffs would use a similar set of evidence to assert claims of FLSA violations as each reported to the same group of people, each reported their hours in the same software, and each were assigned clients in the same way.

Thus, conditional certification is GRANTED at the notice stage. This does not

MEMORANDUM DECISION AND ORDER - 6

prevent a later motion to decertify.

### B. Form and Method of Notice

The parties disagree about the form and method of the notice. The Court now resolves those disputes. After issuance of this Order, the parties must submit a new proposed notice form.[2]

*1. Right to an Attorney*

The Supreme Court has held that notice in a collective action case must include a description of the rights afforded to potential plaintiffs. *Hoffman-La Roche*, 493 U.S., at 172. Courts in the Ninth Circuit have ruled that this direction from the Supreme Court includes disclosing to potential plaintiffs their right to their own attorney. *See Cuevas v. ConAm Mgmt. Corp.*, 2019 WL 5320544 (S.D. Cal. Oct. 21, 2019); *Lopez v. PT Noodles Holdings*, 2021 WL 2576912 (D. Ariz. Jan. 12, 2021); *Fite v. Sonendo, Inc.,* 2020 WL 7861986 (C.D. Cal. Nov. 25, 2020); *Delara v. Diamond Resorts Int'l Mktg.*, 2020 WL 2085957 (D. Nev. Apr. 30, 2020); *Walterscheid v. City of El Monte*, 2018 WL 6321645 (C.D. Cal. Sept. 6, 2018). Thus, as with the disclosure to potential plaintiffs of the costs and obligations associated with litigation, it is essential potential plaintiffs understand the rights afforded to them in a litigation action.

Here, Hanigan asserts that there is no need to include information regarding potential plaintiffs' right to their own attorney because it could be confusing for potential

---

[2] If the parties fail to stipulate to the revised proposed notice, then Hanigan must file a proposed notice consistent with this Order, and OpSec may then file its objections.

plaintiffs. Dkt. 36 at 6. In contrast, OpSec argues, and the Court agrees, that it is essential potential plaintiffs understand their right to an attorney. Dkt 35, at 8. Although Hanigan's concern about clarity is valid, the Court is unconvinced that outweighs the interest in fully informing potential plaintiffs of their rights. Thus, the notice must include a description of potential plaintiffs' right to hire his or her own attorney.

### 2. Fee Arrangement

Idaho Rules of Professional Conduct require counsel to promptly disclose "the basis or rate of the[ir] fees and expenses" to clients "before or within a reasonable time after commencing the representation." Idaho R. Prof. Cond. 1.5(b) & cmnt. [2]. OpSec argues that this language means that Hanigan's attorneys must disclose how their fees are calculated. Hanigan argues that this language shows that Hanigan's attorneys do not need to give the specific percentages of their rates until after they have been hired.

The Court concludes that it is unnecessary for Hanigan's attorneys to disclose their exact fee percentage. The Idaho Rules of Professional Conduct clearly state that attorneys are required to disclose the rates of their fees and expenses "before or *within a reasonable time after commencing the representation*." Idaho R. Prof. Cond. 1.5(b) (emphasis added). Currently, the proposed notice states that Hannigan's attorneys will charge a contingency fee if the potential plaintiffs decide to hire them. Dkt. 36-2, at 3. This is sufficient for a notice so long as once a potential plaintiff hires Hanigan's attorney, the exact fee rates are promptly disclosed.

### 3. Litigation Obligations

Courts in the Ninth Circuit commonly require notice to include a disclosure about

MEMORANDUM DECISION AND ORDER - 8

the costs of litigation. *See, e.g.*, *Hoffman v. Securities Sec. Servs.*, 2008 WL 5054684, at *15 (D. Idaho Aug. 27, 2008); *Fite*, 2020 WL 7861986, at *4; *Barber v. Human Contract*, 2009 WL 10673170, at *1 (C.D. Cal. Dec. 11, 2009); *Lemus v. Burnham Painting & Drywall Corp.*, 2007 WL 1875540, at *2 (D. Nev. Jun. 25, 2007); *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *7 (N.D. Cal. July 18, 2012); *Barrera v. U.S. Airways Grp.*, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013). Generally, these courts have cited concerns about potential plaintiffs not being able to fully ascertain the obligations they will take on if they choose to opt in. *Sanchez*, 2012 WL 2945753, at *7; *see also Hoffman-La Roche*, 493 U.S. at 172.

Occasionally, courts within the Ninth Circuit have chosen not to include disclosure about potential obligations and costs of discovery. *Weeks*, 494 F. Supp. 3d at 660 (citing other cases). When a court has determined that disclosure about the costs of litigation should not be included in the notice, it was when discovery was unlikely. *Id.* That reasoning is inapplicable here (as discovery will be necessary), and the Court finds it imperative that plaintiffs understand the obligations and costs they will take on if they choose to participate in litigation. Therefore, Hanigan must amend the notice to include a disclosure regarding costs and obligations associated with litigation.

*4. Neutrality of the Notice*

The notice and consent forms must convey the neutrality of the court. *See Hoffman-La Roche Inc*, 493 U.S. at 170–71. This includes the form of consent as well. *See id.* Hanigan has made a variety of changes to the notice form at OpSec's request. *See* Dkt. 36 at 8–9. The Court will accept those changes. However, Hanigan has not agreed to three

other changes regarding neutrality OpSec would like to make to the notice. *Id.* OpSec argues that to fully convey neutrality, Hanigan should: (1) delete the reference to any electronic submission address other than email, because it is confusing; (2) delete counsel's toll-free telephone number, as that is not an avenue for consent; and (3) delete the phrase "any other related entities or affiliates," because OpSec is unaware of any other entities or affiliates that are involved in this case. Dkt. 35, at 12–13.

The Court agrees with Hanigan that electronic submission of consent is a valid form of consent. However, the Court agrees with OpSec that language in the notice should be clear throughout both the notice and consent form. Hanigan cited to several Ninth Circuit opinions in defense of including electronic submission. *See, e.g.*, *Randall v. Integrated Comm. Serv. Inc.*, 2021 WL 2328373, at *6 (W.D. Wash. Jun. 8, 2021); *Amaraut v. Sprint/United Mgmt. Co.*, 2019 WL 5696685, at *3 (S.D. Cal. Nov. 4, 2019); *Knight*, 2019 WL 3503052, at *6; *Douglas v. Xerox Bus. Servs., LLC*, 2015 WL 12930486, at *3 (W.D. Wash. Feb. 9, 2015). These courts concluded that the use of an electronic consent form has become ubiquitous in today's world. Thus, the Court agrees that electronic consent is reasonable and convenient for potential plaintiffs who would like to opt-in to the lawsuit.

OpSec disagrees with the language of the notice and consent form citing issues with clarity. Dkt. 35, at 13. The Court appreciates OpSec's concerns. Therefore, Hanigan's new notice and consent form must include consistent language.

Next OpSec argues that Plaintiff's counsel should remove their toll-free phone number because it encourages potential plaintiffs to call Plaintiff's counsel to receive information about the case. And if Plaintiff's counsel is to keep their toll-free number in

MEMORANDUM DECISION AND ORDER - 10

the notice, OpSec argues that the notice should also include the phone number for OpSec's counsel.

Plaintiff's counsel may include its phone number on the notice so that potential plaintiffs may contact them with queries about opting in. OpSec's counsel may not do so. "Including contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion." *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010).

Finally, OpSec argues that Hanigan should delete the language "any other related entities or affiliates," because OpSec is unaware of any other entities or affiliates that are involved in this case. Dkt. 35, at 12–13. Hanigan argues that the inclusion of this language is not to include some other unknown party, but rather to ensure that if any sort of technical misnomer occurs, the opt-in plaintiff can still proceed. The Court will allow Hanigan to keep the language in the notice because the caution is reasonable and does not appear to inconvenience OpSec in any way.

### B. Distribution of Notice

OpSec has agreed to Hanigan's timeline for notice distribution (sixty days), the sending of a reminder notice thirty days after the initial notice is sent, and the distribution of notice through U.S. mail and email. Dkt. 35, at 14. OpSec, however, disagrees with the use of text message to distribute notice, and with Hanigan's request that OpSec produce a list of potential plaintiffs in seven days. *Id.* The Court agrees that text message notice is unnecessarily invasive and that seven days is too short a time to compile an accurate and complete list of potential plaintiffs.

MEMORANDUM DECISION AND ORDER - 11

*1. Notice by Text*

Since the COVID-19 Pandemic began, some courts (mostly located outside of the Ninth Circuit) have begun to direct the use of text message to distribute notice in FLSA cases. *See, e.g.*, *Belt v. P.F. Chang's China Bistro, Inc.*, 2020 WL 3829026 (E.D. Pa. Jul. 8, 2020); *Lupardus v. Elk Energy Servs.*, LLC, 2020 WL 4342221 (S.D. W. Va. Jul. 28, 2020); *Pryke v. First Solar, Inc.*, 2021 WL 5027565 (N.D. Ohia Oct. 29, 2021); *Thrower v. UniversalPegasus, Int'l Inc.*, 484 F.Supp.3d 473, 490 (S.D. Tex. 2020); *Dudley v. TrueCoverage LLC*, 2018 WL 6431869 (C.D. Cal. Sept. 28, 2018). However, often the appropriateness of text message is linked to the potential plaintiffs at hand, such as blue-collar workers who might be more likely to look at their text messages rather than their e-mails or parties that have agreed outside of court to the use of text message. *See Thrower*, 484 F. Supp. 3d at 490; *Herrera*, 2020 WL 7342709, at *12.

Within the Ninth Circuit and the District of Idaho, even during the COVID-19 Pandemic, it appears more common to not allow text message to distribute notice when parties have not agreed to the use of text message. *See Warren*, 2012 WL 346681, at *4; *Kapzynski v. Colt Barbeque & Spirits*, 2021 WL 6063533, at *2 (D. Ariz. Dec. 22, 2021); *Russo v. Joamar Inc.*, 2021 WL 4773185, at *10 (C.D. Cal. Mar. 8, 2021); *Hollis v. R&R Rests.*, 2022 WL 1303263, at *5 (D. Or. May 2, 2022). Courts are less inclined to grant the use of text message when a plaintiff has failed to provide a specific reason that text message is necessary. *See Russo*, 2021 WL 4773185, at *10; *Pettenato v. Beacon Health Options*, 425 F. Supp. 3d 264, 285–86 (S.D.N.Y 2019). Additionally, many courts have expressed concern over the invasiveness of text message communication. *E.g.*, *Hollis*, 2022 WL

1303263, at *5; *Sellers v. Sage Software*, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018); *Sanchez v. Simply-Right Inc.*, 2017 WL 2230079, at *6–7 (D. Colo. May 22, 2017); *Slaughter v. Caiden Mgmt. Co.*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018).

The Court agrees that text messaging is an invasive form of notice distribution that should not be used unless there is good reason. Hanigan has not provided a reason as to why text message is needed beyond the argument that other courts have allowed text messaging. Dkt. 36, at 10. This ignores legitimate concerns about privacy and the cost associated with text messaging to potential plaintiffs. Therefore, the Court finds Hanigan's reasoning insufficient to allow notice to be sent by text message.

*2. Potential Plaintiffs' Contact Information*

The FLSA requires that potential plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. Prompt notice is critical in FLSA cases because the statute of limitations continues to run with each passing day. *See Villareal v. Caremark LLC*, 2014 WL 4247730, at *4 (D. Ariz. Aug. 21, 2014); *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007). Thus, it is imperative that Hanigan receives an accurate list of potential plaintiffs in a timely manner.

The Court will give OpSec fourteen (14) days from the approval of the Notice and the Consent Form to create an accurate list of potential plaintiffs. This list will include each potential plaintiff's "(1) name, (2) last-known address, (3) last-known mobile telephone number, (4) last-known email address, (5) relevant job title(s), and (6) dates of employment in each relevant job title, in an electronic, delimited, and importable format." Dkt. 28, at 1.

The Court believes that seven days is too short a time to provide this level of detailed information in an electronic format that Plaintiff will be able to import. However, Hanigan makes a credible argument that OpSec will likely be able to create this list quickly. The Court finds that fourteen days should be sufficient time to create this list.

## V. CONCLUSION

The Court GRANTS the conditional certification of the putative class. The current draft of the Notice and the Consent Form is DENIED. Hanigan must refile a proposed notice that complies with this Order.

## V. ORDER

The Court HEREBY ORDERS:

1. Hanigan's Motion (Dkt. 28) is GRANTED in PART and DENIED in PART as explained above.

2. In compliance with the directions above, Plaintiff must revise the Notice and the Consent Form within fourteen (14) days of this Order and submit the revised proposed Notice and Consent Form to the Court for approval.

3. OpSec must provide a list of potential plaintiffs within fourteen (14) days of the Court's approval of the revised proposed Notice and Consent Form.

DATED: September 26, 2022

David C. Nye  
Chief U.S. District Court Judge